UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PATRICK D. FOWLER,

        Plaintiff,

        v.                                          Case No. 25-cv-1193-bbc

LORI WACHHOLZ,
KOURTNEY OVIEDO,
JENNA MARICQUE,
AMY POTAPENKO,
VIRGINIA TRZEBIATOWSKI,
CHRISTINA SERRANO,
DEREK HENNING, and
WISCONSIN PATIENTS COMPENSATION FUND,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Patrick Fowler, who is currently serving a state prison sentence at the Wisconsin Secure Program Facility and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Fowler's motion for leave to proceed without prepaying the full filing fee and his motion to appoint counsel and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Fowler has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Fowler has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial

partial filing fee of $9.57. Fowler's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Fowler, on July 18, 2022, while he was housed at Green Bay Correctional Institution, he was seen and treated for hemorrhoids. He explains that his condition began to improve, but it had not resolved, so on August 4, 2022, he was seen by Defendant APNP Virginia Trzebiatowski, who prescribed phenylephrine, a vasoconstrictor found in ointments to treat hemorrhoids. On August 22, 2024, Fowler submitted a health services request stating that he was experiencing blood in his stool and spasms and burning from the hemorrhoids. He states that from August 26 until August 29, 2022, Nurse Jenna Maricque, Nurse Courtney Oviedo, Nurse Amy Potapenko, and Nurse Derek Henning all denied his requests for more hemorrhoid ointment. Nurse Henning also informed Fowler that if he was using more than one tube per week, he should be seen by a provider. Fowler asserts that he had to submit a separate request to be seen by medical staff.

On September 14, 2022, Nurse Christina Serrano allegedly notified Trzebiatowski of Fowler's frequent use and requests for phenylephrine. Trzebiatowski responded to Serrano a couple days later stating that Fowler needed to be seen to understand why he has such bad hemorrhoids, if that is the case. Fowler asserts that he was not examined by Serrano, but about a week later, on September 23, 2022, he was examined by Trzebiatowski. Fowler asserts that he informed her that his condition had worsened. He states that she extended his prescription for phenylephrine and added a prescription for hemorrhoidal suppository, Vaseline, and hydrocortisone. She also prescribed psyllium and MiraLAX for constipation. According to Fowler, on November 15, 2022, he informed Trzebiatowski that he was still having pain from the

3

hemorrhoids, and in response, she merely continued the prescriptions that he told her were ineffective. Fowler notes that Trzebiatowski never physically examined him or referred him to a specialist for further evaluation.

Fowler explains that, on December 7, 2022, Nurse Kourtney Oviedo notified Trzebiatowski that Fowler had been receiving hemorrhoid ointment about once per week since August. Three weeks later, on December 28, 2022, APNP Lori Wachholz cancelled the order for hydrocortisone. That same day, Fowler was transferred to Dodge Correctional Institution, and two days later, he was transferred to the Wisconsin Secure Program Facility. About a month after his transfer, on January 24, 2023, Fowler was referred to a specialist who determined that surgery was required to address the hemorrhoids. Fowler explains that he was diagnosed with grade 4 hemorrhoids and needed to wear adult diapers for fecal incontinence. He states that he was in constant pain and later needed to be treated for anemia for the excessive amount of blood he lost through his anus.

## ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc*., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

4

With the forgoing in mind, the Court will allow Fowler to proceed on a deliberate medical indifference claim against Trzebiatowski. Although Trzebiatowski initially responded to Fowler's complaints regarding his worsening condition by prescribing new medications, Fowler alleges that she persisted with that course of treatment even after he informed her that it was ineffective and that his condition was continuing to worsen. *See Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (explaining that persisting in treatment known to be ineffective can constitute deliberate medical indifference, provided that the doctor was subjectively aware that the treatment plan was ineffective). The Court will also exercise supplement jurisdiction over a medical malpractice/negligence claim against her.

Fowler does not, however, state a claim against the remaining Defendants. According to Fowler, over the course of three days, Nurses Maricque, Oviedo, Potapenko, and Henning denied his requests for more hemorrhoid ointment. Fowler notes that he was informed by Henning that he could not request more than one tube per week. Accordingly, it appears that these nurses were merely enforcing prison policy limitations on refills. Nothing in the complaint suggests that any of them evaluated Fowler or were directly involved in providing him care. The Seventh Circuit long ago explained that there is no general duty of rescue under §1983, so the mere fact that a public employee may be aware of a danger does not mean that he or she must act to avert it. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). If Fowler required more ointment than allowed under the policy, then he should have raised that with his provider. The Court cannot reasonably infer that these nurses were deliberately indifferent to Fowler's medical condition simply because they did their job by enforcing the policy. *See id.* Further, even if Fowler was entitled to an immediate refill, the Court cannot reasonably infer that these nurses knew he would be harmed by a few-day delay in receiving a refill for over-the-counter hemorrhoid ointment. *See*

5

*Burton v Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (explaining that a nurse who does not know that a short delay in delivering treatment would needlessly and substantially prolong a dangerous medical condition does not violate the Eighth Amendment).

Fowler fails to state a claim against Nurse Serrano for similar reasons. According to Fowler, she alerted Trzebiatowski that Fowler was making numerous and frequent requests for hemorrhoid ointment. The Court cannot reasonably infer that a nurse providing the treating provider notice of her patient's medication habits suggests deliberate indifference to the patient's medical condition. To the contrary, her notice to Trzebiatowski led to Trzebiatowski acknowledging that Fowler required further evaluation and treatment. Fowler highlights that Nurse Serrano never examined him, but he ignores that he was scheduled to see Trzebiatowski just days after Trzebiatowski stated that he should be examined, so it was unnecessary for Serrano to also examine him.

Fowler also fails to state a claim against Wachholz, who allegedly cancelled an ointment prescription on the same day that he was transferred to a new institution. Wachholz's involvement in Fowler's care appears to be limited to this single action. According to Fowler, the ointment was ineffective and was only one of multiple interventions that he had been prescribed (none of which, according to Fowler, were effective), so it is unclear what harm he suffered from the cancellation. Moreover, as Fowler explains, just days later, he came under the care of different providers at a new institution who provided him with treatment, including referring him to an outside specialist. Accordingly, the Court cannot reasonably infer that Wachholz's limited involvement, which had no practical impact on Fowler, resulted in a recoverable injury. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (explaining that a plaintiff must not only establish that a defendant violated his constitutional rights, but also that the violation caused the plaintiff injury or damages).

Finally, the Court notes that a plaintiff may recover damages from the Wisconsin Injured Patients and Families Compensation Fund in the event the plaintiff is successful on a state law medical negligence claim against an individual Defendant. *See Reifschneider v. Grossman*, No. 18-C-146, 2019 WL 1522065 (E.D. Wis. Apr. 8, 2019) (citing Wis. Stat. §655.27)). Given that the Court is allowing Fowler to proceed on a malpractice/negligence claim against Trzebiatowski, the Wisconsin Injured Patients and Families Compensation Fund may remain in the case.

## MOTION TO APPOINT COUNSEL

Fowler also filed a motion to appoint counsel, asserting that he has limited access to the law library and limited knowledge of the law and that his efforts to hire counsel have been unsuccessful. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Accordingly, in exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

Although Fowler appears to have satisfied the first prong of the standard, the Court will deny his motion because he appears capable of representing himself during the early stages of this case. Although Fowler has limited experience litigating a case, this is true for nearly all prisoner

plaintiffs and is not a sufficient reason for the Court to use its limited resources to recruit a lawyer to represent Fowler on a volunteer basis. Fowler's complaint is organized, detailed, and easy to understand, giving the Court confidence that he has the skills necessary to prepare and respond to discovery requests. Moreover, contrary to Fowler's characterization, his claim is straightforward and will largely turn on the medical records, which Fowler can access during discovery, and his recollection of his interactions with Trzebiatowski, which he appears capable of presenting to the Court at the appropriate time.

The Court encourages Fowler to review the litigation guide that the Court is enclosing with this order. The guide contains helpful information about how the case will proceed and has a glossary of commonly used legal terminology. If new challenges arise that Fowler does not believe he can overcome on his own, he may renew his motion. If he does so, he should be specific about the challenges he faces and the efforts he has made to overcome them.

**IT IS THEREFORE ORDERED** that Fowler's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Fowler fails to state a claim against Lori Wachholz, Kourtney Oviedo, Jenna Maricque, Amy Potapenko, Christiana Serrano, and Derek Henning, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that Fowler's motion to appoint counsel (Dkt. No. 5) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Fowler's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Virginia Trzebiatowski.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Virginia Trzebiatowski shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Fowler shall collect from his institution trust account the $340.43 balance of the filing fee by collecting monthly payments from Fowler's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Fowler is transferred to another institution, the transferring institution shall forward a copy of this Order along with Fowler's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Fowler is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Honorable Byron B. Conway
c/o Office of the Clerk
United States District Court
Eastern District of Wisconsin
125 S. Jefferson Street, Suite 102
Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Fowler is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Fowler may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin on September 29, 2025.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge